# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

RILEY ANDERSON,

        Plaintiff,

      v.

OSBURT JOHN LORENZO,
*individually and in his official capacity, acting under the color of state law*, *et al.*,

        Defendants.

Case No. 3:25-cv-00094-SLG

## <u>ORDER ON MOTIONS TO DISMISS</u>

Before the Court at Docket 19 is Defendant Brian Penner's Motion to Dismiss. Plaintiff Riley Anderson responded in opposition at Docket 24.[1] Defendant Penner did not file a reply. Also before the Court at Docket 20 is Defendant Osburt John Lorenzo's Motion to Dismiss.[2] Plaintiff responded in

---

[1] An identical response in opposition is also at Docket 27.

[2] The Court refers collectively to Mr. Lorenzo and Mr. Penner as Defendants. Because both Defendants' Motion to Dismiss are functionally identical, the Court cites to only the Motion at Docket 19 throughout this order.

Plaintiff also alleges claims against Tricia Tank, Defendant Lorenzo's supervisor. Docket 17 at ¶ 9. Defendant Tank has not appeared, and the Clerk of Court has entered default against her. Docket 44. Although not named as a Defendant in the case caption, Plaintiff may also be seeking to bring claims against the State of Alaska. *See* Docket 17 at ¶¶ 114-30. The Court does not consider any claims against the State of Alaska, as presently before the Court are only the Motions to Dismiss by Defendants, except to note that such claims would be barred by the Eleventh Amendment. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989))).

opposition at Docket 25.[3]  Defendant Lorenzo did not file a reply.  Oral argument was not requested and was not necessary to the Court's determinations.

## BACKGROUND

The claims in this case arise out of events that occurred in January 2013. The following facts are as alleged in the Amended Verified Complaint and accepted as true for the purposes of this order on Defendants' motions to dismiss:

Plaintiff was born in May 2005 in Anchorage, Alaska.[4]  In January 2013, Plaintiff was living with his mother, Desree Kendall, and his stepfather, Jesse Kendall, in Anchorage.[5]  At that time, Defendant Lorenzo was a social worker employed by the Alaska Office of Children's Services ("OCS").[6]  On January 10, 2013, Defendant Lorenzo entered an "Activity Note" recounting that he had spoken with Plaintiff's teacher who had noticed red marks on Plaintiff's face.[7]  The note indicates that when Plaintiff's teacher asked Plaintiff about the red marks, Plaintiff told her that "something bad happened last night" and that his stepfather had slapped him once on the cheek and once on the chest.[8]  The note further recounts that Defendant Lorenzo visited Plaintiff at his school and Plaintiff reported that his

---

[3] An identical response in opposition is also at Docket 28.

[4] Docket 17 at ¶ 15.

[5] Docket 17 at ¶ 16.

[6] Docket 17 at ¶ 8.

[7] Docket 17 at ¶ 17; *see* Docket 1-1 at 1.

[8] Docket 17 at ¶ 17.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 2 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 2 of 19

stepfather had hit him on the cheek and on the chest.[9] The note states that Plaintiff indicated that it was the first time that his stepfather had "physically disciplined him in a harsh manner" and that Plaintiff's mother was home during the incident but was in another room.[10] In the note, Defendant Lorenzo concluded that there was "[n]o present or impending danger at this time, will continue to assess for present or impending danger."[11]

After this investigation into the incident—and despite noting that physical discipline that leaves red marks "is excessive and poses the threat of significant further injuries to the child"—Defendant Lorenzo concluded that "[t]he case was substantiated, but no further intervention needed, due to a protective mother in the home."[12] Defendant Lorenzo issued a Safety Plan on January 16, 2013, which was signed by Plaintiff's mother, that provided that Plaintiff would be cared for by his mother, would not be left unattended with his stepfather, and only Plaintiff's mother would discipline Plaintiff.[13] Defendant Penner reviewed Defendant Lorenzo's investigation summary and "assented to Lorenzo's determination that 'no further intervention needed, due to a protective mother in the home.'"[14]

---

[9] Docket 17 at ¶ 17.

[10] Docket 17 at ¶ 18; *see* Docket 1-2 at 1.

[11] Docket 17 at ¶ 18; *see* Docket 1-2 at 1.

[12] Docket 17 at ¶ 19; *see* Docket 1-3 at 1.

[13] Docket 1-4.

[14] Docket 17 at ¶ 10.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 3 of 19
Case 3:25-cv-00094-SLG   Document 45   Filed 06/01/26   Page 3 of 19

On or about February 5, 2013, Plaintiff, his mother, and his stepfather moved to Buffalo, New York.[15]  While in New York, in May 2019, Plaintiff's stepfather held Plaintiff against the wall by his neck, strangling him; Plaintiff did not tell anyone about the incident and he "didn't really tell [Child Protective Services] about anything that happened at the house."[16]  Further, while Plaintiff and his family were living in Texas, Plaintiff's stepfather hit Plaintiff with a belt, threw him onto a concrete floor, and left Plaintiff and his sister to walk home after they got out of the car.[17]

A licensed psychologist in Arizona performed an evaluation of Plaintiff and noted in his report that when Plaintiff was younger, he "was terrified of his stepfather" and was "afraid to go home."[18]

Against Defendant Lorenzo, Plaintiff alleges a Due Process claim pursuant to the Fourteenth Amendment, contending that Defendant Lorenzo had a duty to "protect [Plaintiff] from further mental injury and/or emotional harm by Jesse after Jesse physically abused [Plaintiff]."[19]  Plaintiff alleges that the following "affirmative actions" by Defendant Lorenzo violated Plaintiff's Due Process rights: failing to refer Jesse to the Anchorage Police Department or the Anchorage District

---

[15] Docket 17 at ¶¶ 21, 33(h).

[16] Docket 17 at ¶ 23.

[17] Docket 17 at ¶ 24.

[18] Docket 17 at ¶ 25.

[19] Docket 17 at ¶¶ 27-36.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 4 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 4 of 19

Attorney's Office; allowing Jesse to continue living with Plaintiff; relying on Plaintiff's mother to protect Plaintiff from physical and emotional harm; failing to notify Child Protective Services in Buffalo about "Jesse's child abuse of Plaintiff"; failing to investigate whether Jesse had a history of domestic violence before allowing Jesse to have continued contact with Plaintiff; failing to take custody of Plaintiff; finding that Plaintiff's parents were in compliance with a safety plan without contacting Plaintiff and his parents after they moved to Buffalo; allowing Plaintiff and his parents to move to Buffalo without first adequately protecting Plaintiff from further abuse; failing to investigate Jesse further after speaking with Plaintiff in January 2013; and failing to take appropriate steps to protect Plaintiff.[20] Plaintiff alleges that "[a]s a result of defendant Lorenzo's affirmative actions or combination of affirmative actions, defendant Lorenzo placed Plaintiff in a position of an actual, particularized danger."[21] Plaintiff also brings state law claims against Defendant Lorenzo for Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED").[22]

Against Defendant Penner, Plaintiff also alleges a federal Due Process claim.[23] The affirmative actions allegedly taken by Defendant Penner are the same

---

[20] Docket 17 at ¶ 33.

[21] Docket 17 at ¶ 34. Plaintiff's federal Due Process claim against Defendant Lorenzo appears to be substantially repeated at Docket 17 at ¶¶ 85-94.

[22] Docket 17 at ¶¶ 37-55. Plaintiff's IIED and NIED claims against Defendant Lorenzo appear to be substantially repeated at Docket 17 at ¶¶ 95-113.

[23] Docket 17 at ¶¶ 56-65. Plaintiff's federal Due Process claim against Defendant Penner

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 5 of 19
Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 5 of 19

as alleged against Defendant Lorenzo above.[24] Plaintiff alleges that Defendant Penner's "affirmative actions or combination of affirmative actions . . . placed Plaintiff in a position of actual, particularized danger."[25] Plaintiff also brings IIED and NIED claims against Defendant Penner.[26] As relief, Plaintiff seeks compensatory and punitive damages, and attorneys' fees and costs.[27]

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law: 42 U.S.C. § 1983 and the Fourteenth Amendment of the Constitution. The Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. However, the Court does not have diversity jurisdiction over Plaintiff's state law claims, as there is not complete diversity of citizenship as between Plaintiff and Defendants.[28]

## LEGAL STANDARD

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim for which relief can be granted." "To

---

appears to be substantially repeated at Docket 17 at ¶¶ 85-94.

[24] *Compare* Docket 17 at ¶ 62 *with* Docket 17 at ¶ 33.

[25] Docket 17 at ¶ 63.

[26] Docket 17 at ¶¶ 66-84. Plaintiff's IIED and NIED claims against Defendant Penner appear to be substantially repeated at Docket 17 at ¶¶ 95-113.

[27] Docket 17 at 54-57.

[28] The Declaration of Service at Docket 31 shows that Defendant Tank was served in Arizona; Plaintiff is also a citizen of Arizona. Docket 17 at ¶ 7.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 6 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 6 of 19

survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29]  Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[30]

When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave when justice so requires."[31]  However, "leave may be denied if amendment of the complaint would be futile."[32]  Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."[33]

## DISCUSSION

Defendants contend that Plaintiff's Due Process and state tort claims against them must be dismissed.[34]  First, as to the claims against Defendants Lorenzo and Penner in their official capacities, Defendants contend that those claims must be

---

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[30] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[31] Fed. R. Civ. P. 15(a).

[32] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[33] *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citation omitted).

[34] Docket 19 at 5.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 7 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 7 of 19

dismissed because Plaintiff is not seeking injunctive relief.[35]  Plaintiff correctly "concedes that his claim against [Defendants in their official capacities] should be dismissed."[36]  Therefore, Plaintiff's claims against Defendants Lorenzo and Penner in their official capacities are **DISMISSED** with prejudice.

Next, Defendants maintain that Plaintiff's Due Process claim against them seeking damages must be dismissed because "Plaintiff has failed to allege" that either Defendant "took any affirmative action, which is required for relief under the Fourteenth Amendment."[37]  Defendants rely on *DeShaney v. Winnebago County Dept. of Social Services*, in which the Supreme Court considered whether a government social worker "had deprived [a child] of his liberty without due process of law, in violation of his rights under the Fourteenth Amendment, by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known."[38]  The Supreme Court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."[39]  The Supreme Court reasoned that "[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the

---

[35] Docket 19 at 5 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)).

[36] Docket 24 at 1; Docket 25 at 1.

[37] Docket 19 at 5.

[38] Docket 19 at 6 (quoting 489 U.S. 189, 193 (1989)).

[39] *DeShaney*, 489 U.S. at 195.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 8 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 8 of 19

State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.  As a general matter, then, [the Supreme Court] conclude[d] that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[40]

The Supreme Court also rejected the child's argument that the State owed the child a duty that arose out of the "special relationship" between the State and the child "because the State knew that [the child] faced a special danger of abuse at his father's hands, and specifically proclaimed, by word and by deed, its intention to protect him against that danger."[41]  Rather, the Supreme Court held that only "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."[42]  But that principle does not apply when "the State may have been aware of the dangers that [the child] faced in the free world, [but the State] played no part in their creation, nor did it do anything to render him any more vulnerable to them."[43]

The Court agrees with Defendants that *DeShaney* is on point and compels a finding that there was no "special relationship" between Plaintiff and Defendants

---

[40] *Id.* at 196-97.

[41] *Id.* at 197 (citation omitted).

[42] *Id.* at 199-200 (citing *Youngberg v. Romeo,* 457 U.S. 307, 317 (1982)).

[43] *Id.* at 201.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 9 of 19
Case 3:25-cv-00094-SLG     Document 45     Filed 06/01/26     Page 9 of 19

during the events alleged in the Amended Complaint. Plaintiff's Amended Complaint does not allege that in January 2013 Plaintiff was in OCS custody; to the contrary, it alleges Defendants "chose not to take custody of Plaintiff."[44] Therefore, Plaintiff's Due Process claims—that Defendants failed to protect him from his stepfather even after becoming aware of the danger of violence—is identical to the claim that the Supreme Court rejected in *DeShaney*.[45]

Plaintiff maintains that *DeShaney* does not require dismissal of his Due Process claims because the Ninth Circuit has "made an exception to *DeShaney* when a state is responsible for worsening the danger to an individual."[46] Plaintiff cites *Hernandez v. City of San Jose*, in which the Ninth Circuit held that "[a]n exception to the rule applies when government employees 'affirmatively place[ ] the plaintiff in a position of danger, that is, where [their] action[s] create[ ] or expose[ ] an individual to a danger which he or she would not have otherwise faced.'"[47] The *Hernandez* Court explained that liability may attach when a public employee, by his "affirmative act," "create[s] an actual, particularized danger" "that was more dangerous than the one in which they found him."[48] In *Hernandez*, the

---

[44] Docket 17 at ¶ 33(f).

[45] *See* Docket 17 at ¶ 33.

[46] Docket 27 at 5 (first citing *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (alterations in original); and then citing *Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023)).

[47] *Hernandez*, 897 F.3d at 1133 (alterations in original) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006)).

[48] *Id*. (first citing *Kennedy*, 439 F.3d at 1063; and then quoting *Munger v. City of Glasgow Police*

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 10 of 19

Ninth Circuit held that the plaintiffs had sufficiently alleged such affirmative acts by police officers who had actively prevented pro-Trump rally attendees from leaving the rally through safe exits and instead required them "to proceed . . . into the crowd of violent anti-Trump protestors."[49]

Plaintiff also cites *Murguia v. Langdon*, in which the Ninth Circuit held that "the only two exceptions to the general rule against failure-to-act liability for § 1983 claims presently recognized by this court are the special-relationship exception and the state-created danger exception."[50] In *Murguia*, the plaintiff brought a § 1983 suit against various city and county officers and the city and county itself after the plaintiff's two infant sons were killed by their mother during a mental health crisis.[51] The Ninth Circuit held that "[u]nlike the special-relationship exception, the state-created danger exception does not require that the state actor have custody of the plaintiffs."[52] To determine whether the plaintiff had adequately pled a state-created danger claim, the Ninth Circuit examined "'whether the officers left the [twins] in a situation that was more dangerous than the one in which they found [them].'"[53] The *Murguia* Court held that the plaintiff had adequately stated a claim

---

*Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)).

[49] *Id.* at 1129, 1133.

[50] *Murguia*, 61 F.4th at 1108 (citations omitted).

[51] *Id.* at 1100-05.

[52] *Id.* at 1112.

[53] *Id.* (alterations in original) (quoting *Munger*, 227 F.3d at 1086).

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 11 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 11 of 19

against two defendants.[54]  One defendant—a police sergeant—was alleged to have secured a motel room for the twins and their mother, transported them to the motel, and left them there, which "rendered the twins more vulnerable to physical injury by [their mother] as a result of their isolation with her."[55]  The other defendant—a social worker—was alleged to have provided false information to the police sergeant: For example, he reported falsely that the mother did not have a history of child abuse and that the mother was homeless.[56]  The Ninth Circuit held that these allegations "rendered the twins more vulnerable to physical injury by [their mother] by eliminating the most obvious solution to ensuring the twins' safety: returning them to [their father's] custody."[57]  The Ninth Circuit also held that the plaintiff had alleged sufficient facts to show that those two defendants knew about the risk faced by the twins from their mother and that those two defendants were deliberately indifferent to that risk.[58]

Here, Plaintiff has not alleged affirmative acts by Defendants that plausibly state a claim for relief under the Due Process Clause.  Plaintiff alleges 18 "affirmative actions" by Defendants.[59]  These include ten alleged "affirmative

---

[54] *Id.* at 1113-17.

[55] *Id.* at 1113 (citing *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997)).

[56] *Id.* at 1105, 1115-16.

[57] *Id.* at 1115.

[58] *Id.* at 1114-15.

[59] Docket 17 at ¶¶ 33, 62.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 12 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 12 of 19

actions" that regard actions Defendants "chose not to" take.[60]  But these alleged

acts describe omissions, not affirmative actions.   Plaintiff also alleges that

Defendants "allowed [Plaintiff's stepfather] to continue residing with Plaintiff and

[Plaintiff's mother]" and that Defendants "chose to allow [Plaintiff and his stepfather

and mother] to move to New York without first adequately protecting Plaintiff."[61]

However, Plaintiff was already living with his stepfather and mother such that this

allegation also asserts a failure to act, not an affirmative act. Further, Plaintiff was

not in OCS custody such that Defendants had no authority or legal responsibility

to prevent Plaintiff's parents from moving with him to another state.[62]   Plaintiff

further alleges that Defendants "relied on Plaintiff's mother . . . to protect him from

further physical and emotional harm."[63]   Again, Plaintiff essentially alleges that

Defendants did nothing to further protect him from his stepfather.  This is not an

affirmative act.  Plaintiff also alleges that Defendant Lorenzo "decided to stop his

effort to provide adequate notice to the Buffalo, New York, Child Protective

Services' personnel concerning" Plaintiff's stepfather.[64]  Again, this is an allegation

about an omission, not an affirmative act.  Plaintiff also alleges that Defendants

"found that Plaintiff's 'parents were in full compliance of [sic] the safety plan that

---

[60] Docket 17 at ¶ 33(a), (e), (f), (l)-(r).

[61] Docket 17 at ¶ 33(b), (k).

[62] *See* Docket 17 at ¶ 33(f).

[63] Docket 17 at ¶ 33(c).

[64] Docket 17 at ¶ 33(d).

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 13 of 19

was put in place' when they had no further contact with the parents, Plaintiff, or" government employees in Buffalo.[65] But Plaintiff fails to allege any facts suggesting that after Defendants put the safety plan in place and before Plaintiff and his family moved to Buffalo, any violations of the safety plan occurred. And any alleged failure to follow up with the family after they moved to Buffalo is an omission, not an affirmative act. The remaining affirmative acts alleged by Plaintiff regard Defendants' investigative findings and process: Defendants "found 'no maltreatment (of Plaintiff) identified"; "closed the Initial Assessment without adequately determining that [Plaintiff's parents] had complied with the Case Plan"; and "erroneously determined the FRAN neglect score," abuse score, and/or risk level.[66] These allegations describe findings made by Defendants; the Court finds that they, as a matter of law, alone or in combination, do not constitute affirmative actions taken by Defendants that placed Plaintiff in greater danger so as to state a plausible claim of Plaintiff's Due Process rights.

Moreover, even if some of the actions allegedly taken by Defendants constituted affirmative acts, nothing in the Amended Verified Complaint suggests that any of these actions enhanced the danger that Plaintiff already faced by living with his stepfather. Rather, at its core, Plaintiff asserts that Defendants left him in

---

[65] Docket 17 at ¶ 33(h) (alteration in original).

[66] Docket 17 at ¶ 33(g), (i), (j) (alteration in original).

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 14 of 19
Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 14 of 19

the house with his stepfather.[67]  Compared to the affirmative actions taken by the defendants in *Murguia*—affirmative actions that "rendered the twins more vulnerable to physical injury"—Defendants' conduct here, or, more accurately, their alleged inactions, did not plausibly enhance the danger faced by Plaintiff.[68] As such, Plaintiff has failed to state a claim for a violation of his Due Process rights pursuant to the state-created danger exception.

Further, a Due Process claim requires a plaintiff to allege facts that support a plausible claim that a defendant's conduct was egregious; as official conduct only violates substantive due process when the official acts with deliberate indifference such that the "official conduct 'shocks the conscience.'"[69]  Here, Plaintiff alleges that he told Defendant Lorenzo that the January 2013 incident was the first time that his stepfather had hit him, and Defendant Lorenzo established a safety plan with Plaintiff's parents based on that one report.[70]  Based on these allegations, Defendant Lorenzo's failure to investigate further, to remove Plaintiff from his home, or to take any of the other actions alleged in the Amended Complaint do not constitute deliberate indifference.  And Plaintiff and his family moved to New York one month after the January 2013 incident, at which time New York government

---

[67] Docket 28 at 2.

[68] *Murguia*, 61 F.4th at 1115.

[69] *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

[70] Docket 17 at ¶ 17; *see* Docket 1-1 at 1.

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 15 of 19
Case 3:25-cv-00094-SLG   Document 45   Filed 06/01/26   Page 15 of 19

employees would have been responsible for investigating Plaintiff's well-being. The Court therefore finds that the Amended Verified Complaint does not satisfy Plaintiff's burden to allege plausible facts that if proven would show that Defendants Lorenzo or Penner violated his Fourteenth Amendment Due Process rights.

As for Plaintiff's state law claims for IIED and NIED against Defendants, Defendants maintain that those claims must also be dismissed because Defendants did not owe Plaintiff a duty and, in any event, Defendants are entitled to qualified immunity.[71] In light of the Court's dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Pursuant to 28 U.S.C. § 1367, a "federal court has supplemental jurisdiction over state-law claims sharing a 'common nucleus of operative fact' with the federal-law ones."[72] However, "subsection (c) [of this statute] explains that the supplemental jurisdiction just conferred is in some measure discretionary. That subsection provides that a district court 'may decline to exercise supplemental jurisdiction' in three specific situations: (1) if the supplemental claim 'raises a novel or complex issue of State law'; (2) if the supplemental claim 'substantially predominates' over the claims within the court's original jurisdiction; and (3) if the

---

[71] Docket 19 at 7-8.

[72] *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 16 of 19

Case 3:25-cv-00094-SLG    Document 45    Filed 06/01/26    Page 16 of 19

district court 'has dismissed all claims over which it has original jurisdiction.'"[73] "In all those contexts, federal law is not where the real action is. So although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court."[74] Here, because the Court grants Defendants' motions to dismiss as to Plaintiff's federal Due Process claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state IIED and NIED claims against these Defendants at this time.

## LEAVE TO AMEND

Rule 15 requires that leave to amend "be freely given when justice so requires."[75] "This policy is to be applied with extreme liberality."[76] The Supreme Court has identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint.[77] Of these, "the consideration of prejudice to the opposing party carries the greatest weight."[78] Here, there is no evidence of bad faith,

---

[73] *Id.* at 31-32.

[74] *Id.* at 32 (citing *Gibbs*, 383 U.S. at 726-27).

[75] Fed. R. Civ. P. 15(a)(2).

[76] *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation omitted) (citing *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001)).

[77] *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

[78] *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap.*, LLC, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend).

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 17 of 19

amendment would be unlikely to cause undue delay, and no prejudice to Defendants has been shown. While Plaintiff has previously amended his complaint, it was pursuant to a Court order granting his motion to be substituted as Plaintiff in this case.[79]

While the Court finds that amendment is likely futile given the Supreme Court's holding in *DeShaney* and the Ninth Circuit's holding in *Murguia*, in applying leave to amend with the extreme liberality required, the Court grants Plaintiff leave to amend his complaint. Plaintiff might be able to plead affirmative actions that were taken by one or both Defendants not inconsistent with the allegations in the verified complaint such that they created or exposed Plaintiff to a danger which he would not have otherwise faced so as to plausibly allege a Due Process claim. He could then replead his NIED and IIED claims. Plaintiff is therefore accorded an opportunity to file a Second Amended Complaint ("SAC").

An amended pleading replaces the prior pleading in its entirety.[80] Accordingly, if Plaintiff chooses to file a SAC, the SAC must replead any claims against Defendants that Plaintiff intends to pursue. Any claim not repled in the SAC will be deemed waived.[81]

---

[79] Docket 17; Docket 14 at 1-2.

[80] *See* Fed. R. Civ. P. 15; L.Civ.R. 15.1.

[81] *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (claims voluntarily dismissed are waived if not repled); *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 973 n.14 (9th Cir. 2013) ("Because [the plaintiff] did not voluntarily renew these claims, however, it effectively abandoned them.").

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 18 of 19

## CONCLUSION

IT IS ORDERED that Defendants' Motions to Dismiss at Docket 19 and Docket 20 are each **GRANTED** and that Plaintiff is accorded leave to amend. Plaintiff may file a SAC **within thirty (30) days from the date of this order**. Plaintiff must not bring claims against Defendants Lorenzo or Penner in their official capacities. Failure to file a SAC by that date will be deemed a decision by Plaintiff to stand upon the existing allegations and the Court will then dismiss these Defendants for failure to state a federal claim with prejudice and without prejudice to the filing of Plaintiff's state law claims against these Defendants in state court.

Defendants Lorenzo and Penner shall file an Answer or otherwise respond to the SAC **within twenty-one (21) days** of the date the SAC is filed.

DATED this 1st day of June, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:25-cv-00094-SLG, *Anderson v. Lorenzo, et al.*
Order on Motions to Dismiss
Page 19 of 19
Case 3:25-cv-00094-SLG   Document 45   Filed 06/01/26   Page 19 of 19